# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW MOYNIHAN and** | : | **CIVIL ACTION** |
| **KAREN MOYNIHAN** | : | |
| *Plaintiffs, pro se* | : | **NO. 19-0648** |
| | : | |
| **v.** | : | |
| | : | |
| **THE WEST CHESTER AREA** | : | |
| **SCHOOL DISTRICT** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                   MARCH 18, 2022

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiffs Andrew and Karen Moynihan ("Parents"), the parents of C.M., proceeding *pro se*, brought this civil action against Defendant The West Chester Area School District (the "School District"), appealing the Final Decision and Order of Hearing Officer Brian J. Ford (the "Hearing Officer") on their claim filed pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*[1]   Before this Court are the parties' cross-motions for summary judgment/judgment on the administrative record.  [ECF 48, 52].[2]   The issues raised in the cross-motions have been fully briefed and are ripe for disposition.  For the reasons set forth herein, the decision of the Hearing Officer is affirmed, and judgment is entered in favor of the School District.

---

[1]       The IDEA was amended and renamed the Individuals with Disabilities Education Improvement Act (the "Act"), effective July 1, 2005.  *See* Pub. L. No. 108-446, 118 Stat. 2715 (2005).  Notwithstanding this change in the name of the statute, courts and litigants—including the parties in this action—continue to refer to this statute as the IDEA.  *See, e.g.*, *H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 408 (3d Cir. 2017).  For purposes of clarity and consistency, this Court will refer to the Act as the IDEA in this Memorandum Opinion.

[2]       This Court has also considered the parties' briefs in support of their initial cross-motions for summary judgment/judgment on the administrative record.  [ECF 34, 38].

**BACKGROUND**

Before the proceedings underlying this appeal, Parents filed due process complaints alleging that C.M. was denied a FAPE during the 2013–14 (9th grade), 2014–15 (10th grade), and 2015–16 (11th grade) school years.[3]  Parents filed the due process complaint underlying this action with the Office for Dispute Resolution,[4] broadly alleging therein that the individualized education programs ("IEPs"),[5] designed for C.M. by the School District for the 2017–18 school year, failed to provide C.M. with a free appropriate public education ("FAPE").  As a remedy, Parents sought reimbursement for the cost of C.M.'s psychological treatment over the course of that school year.

Following an evidentiary hearing, the Hearing Officer issued a Final Decision and Order finding that the School District had provided C.M. a FAPE during the 2017–18 school year and, accordingly, denied Parents' request for reimbursement.  Parents appealed the administrative decision by filing this civil action seeking the reversal of the Hearing Officer's decision.  [ECF 3].  After a period of discovery, the parties filed initial cross-motions for summary judgment/judgment on the administrative record.  [ECF 34, 38].  This Court denied these initial cross-motions, without prejudice, finding that the cross-motions failed to sufficiently address whether the Hearing Officer

---

[3]     Parents also filed complaints requesting a new Independent Educational Evaluation ("IEE"), arguing that C.M.'s previous March 2014 and March 2017 reports were flawed.  These claims were consolidated before Hearing Officer Charles W. Jelley.  On July 30, 2018, Hearing Officer Jelley issued a Final Decision and Order finding that the School District provided C.M. a FAPE during the 2013–14, 2014–15, and 2015–16 school years.  Hearing Officer Jelley also denied Parents' demands for a new IEE, finding the March 2014 and March 2017 IEEs were comprehensive and appropriate assessments of C.M.'s unique needs.  Parents appealed, and this Court eventually affirmed Hearing Officer Jelley's decision.  *Moynihan et al. v. The West Chester Area Sch. Dist. et al.*, No. 18-cv-4388 (E.D. Pa. July 16, 2021), Docs. 44–46. Parents then appealed to the United States Court of Appeals for the Third Circuit, (the "Third Circuit"), where a panel affirmed this Court's decision.  *Moynihan et al. v. West Chester Area Sch. Dist. et al.*, No. 21-2530 (3d Cir. Mar. 4, 2022), Docs. 21–22.

[4]     The Office for Dispute Resolution is the special education resolution system in Pennsylvania.

[5]     An IEP is a comprehensive plan prepared by a child's IEP Team, which includes teachers, school officials, the child's parents, and sometimes the child.  *See* 20 U.S.C § 1414(d)(1)(B).

erred in finding that the School District did not deny C.M. a FAPE during the 2017–18 academic year by failing to include psychological treatment in C.M.'s IEPs for that year, and, correspondingly, whether the Hearing Officer erred in finding that Parents were not entitled to reimbursement for expenses they incurred in providing C.M. with psychological treatment during that year. This Court ordered the parties to file new cross-motions specifically addressing these issues and to supplement the administrative record, if appropriate. [*See* ECF 42]. The School District filed a motion to supplement the administrative record, [ECF 43], which was granted, [ECF 44]. Thereafter, the parties filed the instant cross-motions.

The facts relevant to the parties' cross-motions are summarized as follows:[6]

The School District is a Pennsylvania public school district and a local educational agency ("LEA") under the IDEA. Parents and their child, C.M., reside within the West Chester Area School District's boundaries. C.M. is a former student of the School District who has been diagnosed with Autism Spectrum Disorder and Social Anxiety Disorder.

### I.   The 2017 IEE and Reevaluation Report

On March 20, 2017, the School District issued a Reevaluation Report (the "Report") following an IEE. Among the Report's contributors were two school psychologists, Drs. Kern and Morley, who helped conduct the IEE. The Report indicated C.M.'s diagnoses of Autism Spectrum Disorder and Social Anxiety Disorder. The Report included a statement from C.M.'s mother explaining that C.M. had been "speaking of suicide and [was] being treated by a psychologist weekly since the summer" of 2016. (Admin R. Ex. 7, P-2, at p. 4). The Report noted that "no risk assessment has even been completed" because no instances of suicidal ideation by C.M. had been reported to school personnel. (*Id.*).

The Report also provided the results of several assessments completed by psychologists. Among these results, the psychologists wrote that C.M. reported "typical" levels of "social stress" and that C.M. reported feelings of anxiety and depression "no more often than others [C.M.'s] age." (Admin. R. Ex. 7, P-2, at p. 35). Based on the results of the evaluation, the Report explained that C.M. required supports related to planning and organizing skills, as well as "supports to continue to build appropriate self-advocacy skills and social skills." (*Id.* at p. 38).

---

[6]   These facts are taken from the administrative record on appeal and the parties' briefs in support of their cross-motions.

## II.     Planning for the 2017–18 School Year

Near the end of the 2016–17 school year (12th grade), C.M. had earned enough credits to graduate from high school and had expressed a desire to attend college.  At their annual meeting, however, C.M.'s IEP Team decided to withhold C.M.'s diploma so that C.M. could spend a 13th year of school participating in the Aspire and Discover programs.  Aspire and Discover are college transition programs run by the Chester County Intermediate Unit ("CCIU"), a non-profit organization that provides services—including special education services—to school districts in Chester County, Pennsylvania.[7]  The resulting April 18, 2017 IEP reflected the decision that C.M. enroll in the Aspire and Discover programs and identified two goals for the year related to "planning" and "study skills."  Notably, these goals were not considered academic in nature by the IEP Team.

## III.    C.M.'s 13th Year

On September 19, 2017, C.M.'s IEP was revised to specify that services for the academic year would be provided by CCIU through the Aspire and Discover programs.  The IEP was again revised in February 2018 to include C.M.'s WCU course information and progress in the Aspire and Discover programs.

C.M. enrolled in and passed two courses at WCU during the 2017–18 academic year, earning a grade of D in a history course and D- in a sociology course.  The Aspire staff did not communicate with C.M.'s college professors because C.M. did not consent to such communications.  At various times throughout the year, the teachers and staff at Aspire noticed that C.M. exhibited some anxiety.

C.M. also worked at the Chester County Prothonotary and Adult Probation Offices as part of the Discover program.  Throughout the school year, C.M. continued psychotherapy with Dr. Tjitske Milks, Psy.D., who had been treating C.M. since 2016.

On April 12, 2018, C.M.'s IEP Team met to discuss C.M.'s progress and future goals.  C.M. wanted to receive a high school diploma and enroll at Delaware

---

[7]      Aspire is a non-academic, dual enrollment program in which students receive supports through CCIU while taking college courses at West Chester University ("WCU").  The CCIU supports are aimed at improving the students' self-advocacy, social, organizational, and other skills.  WCU courses are not adapted for Aspire students and are graded by WCU professors, not Aspire teachers.  Students in Aspire have the option to allow the Aspire staff to communicate with the professors teaching their courses at WCU, but providing consent is up to the student.  Aspire does not provide students with academic tutoring, though the teachers and staff sometimes encourage students to seek out tutoring themselves.

Concurrently, the Discover program provides Aspire students with work experience in their community.  While working, Discover students receive support from a job trainer that decreases over time.  The work experience is unconnected to students' academic efforts at WCU.

County Community College ("DCCC") in the fall.  Only C.M.'s mother, Plaintiff Karen Moynihan, disagreed with C.M.'s plan to graduate and attend DCCC.  The team issued a new IEP to cover the remainder of C.M.'s spring semester at WCU and participation in the Aspire and Discover programs.  The IEP reflected that C.M. had achieved the "planning" goal introduced in the April 2017 IEP and was making progress toward the "study skills" goal.

By the end of the academic year, C.M. completed the Aspire and Discover programs.  In June 2018, C.M. personally requested—and received—a high school diploma from the School District.  C.M. was accepted to DCCC for matriculation in fall 2018.

## LEGAL STANDARD

The IDEA provides that if parents believe that an IEP fails to provide their child with a FAPE, they may seek an administrative "impartial due process hearing," 20 U.S.C. § 1415(f), by filing a "complaint notice," *id.* § 1415(b)(7).  The scope of the due process hearing may not go beyond the issues raised in the complaint notice unless the parties agree otherwise.  *Id.* § 1415(f)(3)(B).  The pleading standards are minimal, requiring simply "a description of the nature of the problem" and "a proposed resolution."  *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 54 (2005) (citing 20 U.S.C. § 1415(b)(7)(B)(ii)–(iii)).  "Any party aggrieved by the findings and decision" made in the administrative proceeding may then bring a civil action in state or federal court.  20 U.S.C. § 1415(i)(2)(A).  The federal district court shall review the record of the administrative proceedings, hear additional relevant, non-cumulative, and useful evidence at the request of a party, and—based on a preponderance of the evidence—grant such relief as it deems appropriate.  *Id.* § 1415(i)(2)(C); *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995).

The standard of review for an administrative decision in district court is a "modified *de novo*" review; the court must give "due weight" to the hearing officer's decision and the administrative proceedings.  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 205–06 (1982); *Shore Reg. High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004);

*S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).  The court must defer to the hearing officer's factual findings and credibility determinations unless the court can identify contrary, non-testimonial evidence in the record or explain why the record, read in its entirety, compels a different conclusion.  *S.H.*, 336 F.3d at 270.  This "due weight" standard means that the court shall consider the hearing officer's factual findings to be *prima facie* correct.  *Id.* "Whether an IEP is appropriate is a question of fact."  *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010).  The court's review of a hearing officer's application of legal standards and conclusions of law, however, requires no deference to the administrative hearing officer's legal determinations; rather, the legal determinations are subject to plenary review.  *Carlisle Area Sch. Dist. v. Scott P. By and Through Bess P.*, 62 F.3d 520, 528 n.3 (3d Cir. 1995).

Courts may not "substitute their own notions of sound education policy for those of the educational agencies they review."  *Susan N.*, 70 F.3d at 757 (citing *Rowley*, 458 U.S. at 205–06). Courts must not impose "their view of preferable educational methods upon the States."  *Rowley*, 458 U.S. at 207.  Neither can parents "compel a school district to provide a specific program or employ a specific methodology in educating a student."  *J.E. v. Boyertown Area Sch. Dist.*, 834 F. Supp. 2d 240, 246 (E.D. Pa. 2011), *aff'd sub nom. J.E. ex rel. J.E. v. Boyertown Area Sch. Dist.*, 452 F. App'x 172 (3d Cir. 2011).  Even the school is not required to select "the program supported by the optimal level of peer-reviewed research," as long as the method used is "reasonably calculated" to provide an educational benefit.  *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 277 (3d Cir. 2012).  The question is not whether a program is ideal, but rather whether it is reasonable. *Endrew F. ex rel. Joseph F. v. Douglas Sch. Dist.*, — U.S. —, 137 S. Ct. 988, 999 (2017).

The party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged.  *Ridley*, 680 F.3d at 270 (citations omitted).  As the

United States Supreme Court has noted, "[t]he burdens of pleading and proof with regard to most facts have been and should be assigned to the [party] who . . . seeks to change the present state of affairs." *Schaffer*, 546 U.S. at 56 (*quoting* 2 McCormick on Evidence § 337 at 412 (5th ed.)). Under the IDEA, it is the party who is "aggrieved by the findings and decision" of the hearing officer that seeks to change the present state of affairs. *See* 20 U.S.C. § 1415(i)(2)(A). "Absent some reason to believe that Congress intended otherwise," the burden of persuasion falls where it usually does—on the party seeking relief. *Schaffer*, 546 U.S. at 57–58.

Importantly, "courts must accord special care to *pro se* claimants." *In re Energy Future Holdings Corp.*, 949 F.3d 806, 824 (3d Cir. 2020) (internal quotation marks and citation omitted). The court must liberally construe *pro se* filings, holding them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**DISCUSSION**

As noted, the issues before this Court are whether the Hearing Officer erred in finding that the School District provided C.M. a FAPE during the 2017–18 school year and, correspondingly, whether the Hearing Officer erred in finding that Parents were not entitled to reimbursement for expenses they incurred in providing C.M. with psychological treatment. Specifically, in their cross-motion, Parents advance three arguments, *to wit*: (1) the Hearing Officer erred by excluding the testimony of two witnesses at the administrative hearing; (2) C.M.'s placement in the Aspire and Discover programs was not reasonable; and (3) C.M.'s IEPs covering the 2017–18 school year should have provided for psychological treatment. In its cross-motion, the School District argues that (a) Parents have not exhausted their claim regarding the School District's failure to include

psychological treatment in C.M.'s IEPs and, (b) regardless, that Parents' broad claim that C.M. was denied a FAPE is unsupported by the administrative record.

After carefully reviewing the supplemented administrative record, including the transcripts of the administrative hearing, the parties' exhibits, and the Hearing Officer's decision, and for the reasons set forth herein, this Court finds that the School District provided C.M. a FAPE during the 2017–18 year and, accordingly, affirms the decision of the Hearing Officer.

### *Exhaustion*

As a threshold matter, the School District contends that Parents have not asserted, in their federal complaint, a claim that psychological treatment should have been provided to C.M. in the 2017–18 IEPs, and have not exhausted this claim in the underlying administrative proceedings. The administrative record, however, does not support the School District's contention.

For a federal court to consider a parent's FAPE claim under the IDEA, the parent must first exhaust the administrative remedies available to them, unless certain exceptions apply. *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 275 (3d Cir. 2014). Exhaustion typically includes filing a due process complaint and participating in an administrative hearing. *See id.* at 274 (citing 20 U.S.C. § 1415(g)(1)). If the parent is the party "aggrieved by the findings and decision" of the administrative proceeding, the parent may then bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2).

As noted, Parents are proceeding *pro se*. When evaluating the pleadings of a *pro se* plaintiff, a court must not "attempt to rewrite the pleadings to include claims that were never presented" and is under no obligation to "explore exhaustively all potential claims of a *pro se* plaintiff." *Freeman v. Allentown Sch. Dist.*, 2019 WL 4805224, at *2 (E.D. Pa. Oct. 1, 2019) (citation omitted). However, the court must construe a *pro se* complaint liberally. *Erickson*, 551

U.S. at 94. "Where a court 'can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, . . . or his unfamiliarity with pleading requirements.'" *Freeman*, 2019 WL 4805224, at *2 (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Liberally construing Parents' due process complaint, their attempts to introduce evidence at the administrative hearing, and their federal complaint, this Court finds that Parent sufficiently exhausted their claim that the School District denied C.M. a FAPE during the 2017–18 IEPs when it failed to provide for psychological treatment. Notably, much of Parents' complaint on appeal focuses on the Hearing Officer's decision to exclude the testimony of two school psychologists who conducted C.M.'s 2017 reevaluation. Parents allege that the exclusion of these witnesses "insured that our burden of proof could not occur." (Compl., ECF 3, at p. 11). Parents further argue that "the most relevant reason that we could not prove that [the School District] had denied [C.M.] a FAPE for [C.M.'s] 13th school year was because Mr. Ford would not allow pertinent witnesses to testify during the proceeding." (*Id.* at 13). Clearly, Parents believe that the two psychologists' testimony would have provided sufficient evidence to support their contention that the IEPs covering C.M.'s 13th year were deficient in some way pertaining to C.M.'s psychological health. A liberal reading of Parents' complaint, therefore, suggests that Parents asserted that the IEPs should have, among other things, provided for psychological treatment.

In its cross-motion, the School District emphasizes that Parents' objection to a particular sentence in the Hearing Officer's Final Decision and Order that discussed remedies suggests that Parents did not previously intend to argue that the School District's failure to include psychological treatment in C.M.'s IEPs constituted a denial of FAPE. The School District contends that,

"[l]ogically, this paragraph was intended as an argument that Hearing Officer Ford prevented the Plaintiffs from substantiating their *damages* claim." (Def.'s Br., ECF 48-1, at pp. 12–13 (emphasis added)). This Court is not convinced. The *pro se* Parents likely overlooked the legal distinction between their FAPE argument and their damages argument and, likewise, the placement of the reasoning underlying the Hearing Officer's decision. This misunderstanding does not belie Parents' otherwise apparent intent to challenge the exclusion of psychological treatment from C.M.'s IEPs. *See Freeman*, 2019 WL 4805224, at *2.

Furthermore, a review of the administrative record suggests that Parents sought to advance this argument from the start of this litigation when they filed their due process complaint, as evidenced by the sole remedy Parents sought in their due process complaint—reimbursement for the cost of C.M.'s psychological treatment. As noted, at the administrative hearing, Parents attempted to introduce the testimony of two school psychologists who had evaluated C.M. Parents also repeatedly refer to C.M.'s *social and emotional* "regression"—in addition to academic "regression"—in their initial due process complaint, at the administrative hearing, and in their briefs before this Court. Parents were clearly dissatisfied with C.M.'s academic performance during the 2017–18 school year and, understandably, have devoted much of their arguments to the appropriateness of C.M.'s placement in the Aspire program. That main focus does not discount any possibility that Parents also have sought to challenge the exclusion of psychological treatment from C.M.'s IEPs. For these reasons, this Court finds that Parents exhausted this issue. Having determined that Parents exhausted this claim, this Court will address whether the Hearing Officer erred in excluding two of Parents' witnesses.

### *Exclusion of Witnesses*

Parents argue that they were unable to substantiate their FAPE claim before the Hearing Officer because the testimony of two of their witnesses was excluded at the administrative hearing. Specifically, Parents argue that Doctors Kern and Morley—two school psychologists who collaborated on C.M.'s IEE and accompanying Report in 2017—would have offered testimony regarding C.M.'s emotional, social, and academic "regression," thus, supporting Parents' claim that C.M. was denied a FAPE.

From the administrative record, it appears that on the first day of the administrative hearing, the School District asked Parents for an offer of proof for both witnesses. Ms. Moynihan offered that Dr. Kern "was the co-author and co-conductor of . . . [C.M.'s] most recent reevaluation which occurred in 2017." (Admin. R. Ex. 5, 25:11–16). Similarly, Ms. Moynihan offered that Dr. Morley, a school psychologist with the CCIU, "was the co-author of . . . [C.M.'s] 2017 reevaluation." (*Id.* 29:6–9). Ms. Moynihan offered no further explanation regarding the content of the psychologists' proposed testimony and did not explain whether the psychologists would offer testimony on any topic within their personal knowledge outside the scope of the Report itself, which was an exhibit already in evidence. The Hearing Officer sustained the School District's objection to the psychologists' testimony because the appropriateness of the Report was an issue in the concurrent proceeding on Parents' pending claims before Hearing Officer Jelley.[8]

---

[8]    As noted, Parents previously filed due process complaints alleging denials of FAPE during previous school years and contending that the March 2017 IEE and Report were flawed. *See supra* note 3. Those consolidated claims were still pending before Hearing Officer Jelley on the first day of the administrative hearing before Hearing Officer Ford. On July 30, 2018, while this matter was still pending, Hearing Officer Jelley issued a decision finding that the School District provided C.M. a FAPE during the 2013–14, 2014–15, and 2015–16 school years. Notably, Hearing Officer Jelley found the Report to be a comprehensive and appropriate assessment of C.M.'s unique needs. Parents appealed and ultimately, the Third Circuit affirmed this Court and the Hearing Officer's decision. *Moynihan*, No. 18-cv-4388 (E.D. Pa. July 16, 2021), Docs. 44–46; *Moynihan*, No. 21-2530 (3d Cir. Mar. 4, 2022), Docs. 21–22.

This Court finds that Parents have not presented sufficient evidence to establish that the Hearing Officer's decision to exclude the testimony of the psychologists was improper. As noted, Ms. Moynihan only briefly explained that the psychologists had collaborated on C.M.'s 2017 IEE and the Report. Ms. Moynihan never indicated that Dr. Kerns' and/or Dr. Morley's testimony would touch upon C.M.'s need for psychological treatment during the 2017–18 year or the issue of whether the Aspire and Discover programs were appropriate. To the extent that Parents intended for the psychologists to testify regarding C.M.'s need for psychological treatment or the inappropriateness of the Aspire and Discover programs, their exclusion was proper as the psychologists did not include any such discussion in the Report. Parents offer no support for their suggestion that the psychologists would have "explain[ed] how or why C.M. had regressed emotionally, socially and academically." (Pls.' Br., ECF 52, at p. 9). As discussed below, the Report itself—already an exhibit in evidence—included only limited evidence pertaining to C.M.'s mental and emotional health. Under these circumstances, this Court cannot find that the Hearing Officer acted improperly by sustaining the objections to the psychologists' testimony.

In conclusion, Parents have not established that the Hearing Officer erred by precluding the testimony of Drs. Kern and Morley.

### *Parents' FAPE Claim*

Parents claim that the IEPs formulated by the School District for the 2017–18 school year denied C.M. a FAPE. Specifically, Parents argue that C.M.'s placement in the Aspire and Discover programs was not reasonable and that C.M.'s IEPs covering the 2017–18 school year should have included psychological treatment.

Under the IDEA, institutions that receive federal education funding are required to provide a FAPE to children with disabilities. 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A); *Endrew F.*, 137

S. Ct. at 993; *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012). A FAPE "includes both 'special education' and 'related services.'" *Endrew F.*, 137 S. Ct. at 994 (citing 20 U.S.C. § 1401(9), (26), (29)); 34 C.F.R. § 300.17. The IDEA's list of related services includes, among others, "psychological services" and "counseling services." 20 U.S.C. § 1401(26)(a). Once an LEA identifies a child as disabled, it must develop an IEP for the child that is "reasonably calculated to enable [the] child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 1001; *see also* 20 U.S.C. § 1414(d) (defining IEP); *Mary Courtney T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 240 (3d Cir. 2009).

The core of the IDEA is the collaborative process between parents and school officials to fashion the IEP. *See Endrew F.*, 137 S. Ct. at 994 (citing 20 U.S.C. § 1414). This collaboration involves careful consideration of the child's individual circumstances. *Id.* "It is through the IEP that the 'free appropriate public education' required by the Act is tailored to the unique needs of a particular child." *Id.* at 1000 (internal quotations and alteration omitted). The IEP must "set out a plan for pursuing academic and functional advancement." *Id.* at 999 (citing 20 U.S.C. § 1414(d)(1)(A)(i)(I)–(IV)). It must "include 'a statement of the child's present levels of academic achievement and functional performance,' describe 'how the child's disability affects the child's involvement and progress in the general education curriculum,' and set out 'measurable annual goals, including academic and functional goals,' along with a 'description of how the child's progress toward meeting' those goals will be gauged." *Id.* at 994 (citing 20 U.S.C. § 1414(d)(1)(A)(i)(I)–(III)). Importantly, the "IEP is not a form document. It is constructed only after careful consideration of the child's present levels of achievement, disability, and potential for growth." *Endrew F.*, 137 S. Ct. at 999. The educational program offered to the child "must be s*pecially* designed to meet [the] child's *unique* needs through an *individualized* education

program." *Id.* at 999 (citing 20 U.S.C. § 1401(29)) (internal quotation marks and alteration omitted).

At the center of a district court's analysis as to whether an educational program provided a child a FAPE is the determination of whether the educational program was reasonable. *Rowley*, 458 U.S. at 207. "The adequacy of a given IEP turns on the unique circumstances of the child for who it was created." *Endrew F.*, 137 S. Ct. at 1001. The LEA is not obligated to "provide 'the optimal level of services,' or incorporate every program requested by the child's parents," *Ridley*, 680 F.3d at 269 (citations omitted), nor should the IEP necessarily aim for grade-level advancement, *Endrew F.*, 137 S. Ct. at 1000. However, the United States Supreme Court has made clear that the IEP must be "appropriately ambitious" considering the child's circumstances. *Id.*

Here, Parents argue that C.M.'s placement in the Aspire and Discover programs denied C.M. a FAPE. Parents primarily point to the D and D- grades C.M. received in the WCU courses as evidence that C.M. did not make appropriate progress. However, regarding Parents' claim that C.M. "regressed" academically, there is no evidence suggesting that the grades C.M. received at WCU, a four-year university, are somehow comparable to the grades C.M. received in high school. Notably, C.M. did not give consent for the Aspire program staff to communicate with his WCU professors. Therefore, it is disingenuous to suggest that the Aspire staff could have done more within the program to enable C.M. to earn higher grades. In fact, the record indicates that C.M. was encouraged to find an academic tutor and, at one point, reached out to a member of the Aspire staff to inquire about academic tutoring services at WCU. Based on this evidence, this Court agrees with the Hearing Officer's finding that C.M.'s grades at WCU do not suggest that C.M.'s placement in the Aspire and Discover programs was inappropriate.

Further, the goals identified in C.M.'s April 2017 IEP were not academic in nature but instead were related to "planning" and "study skills." C.M.'s placement in the Aspire and Discover programs was meant to facilitate C.M.'s achievement of these goals while preparing him for college. C.M. had already earned enough credits to graduate from high school in 2017, and the IEP Team focused its attention on C.M.'s college readiness in other areas, such as self-advocacy and organization, given C.M.'s personal goals of attending college and gaining independence. The administrative record shows that C.M. made appropriate progress toward the two goals identified in the April 2017 IEP while participating in the Aspire and Discover programs; the IEP Team found that C.M. had achieved one goal and was making progress toward achieving the other. While the feedback C.M. received from his Discover job trainers was mixed, the Discover and Aspire staff testified that this was to be expected considering that supports were withdrawn over time so as to promote C.M.'s independence. C.M.'s acceptance to DCCC at the end of the 2017–18 school year also suggests appropriate progress.

Nonetheless, in support of their cross-motion, Parents point to the United States Supreme Court's decision in *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, 137 S. Ct. 988, and contend that *Endrew F.* specifies that the student must make "*significant progress* with his or her IEP goals, while simultaneously, through his or her IEP, being *sufficiently challenged* from year to year to do so." (Pls.' Br., ECF 52, at p. 11 (emphasis added)). Parents' interpretation of the Supreme Court's opinion is misguided. In *Endrew F.*, the Supreme Court noted that the behavior of the child whose IEP was at issue "improved significantly" while attending a specialized private school. 137 S. Ct. at 997. The Court explained that to meet the "appropriately ambitious" standard, an IEP should ensure that the child has "the chance to meet challenging objectives." *Id.* at 1000. The Court ultimately held that the child must make progress that is

"appropriate in light of the child's circumstances" and expressly declined to state what such progress would look like in every case.  *See id.* at 1001.  Consistent with the holding in *Endrew F.*, the Hearing Officer found, and this Court agrees, that the IEPs covering the 2017–18 school year were appropriately ambitious and allowed C.M. the opportunity to meet challenging objectives, given that the Aspire and Discover programs enabled C.M. to make a supported transition from high school to college and vocational settings.  Furthermore, C.M. made progress through the Aspire and Discover programs that was appropriate in light of C.M.'s unique needs and circumstances.

Parents also argue that the School District denied C.M. a FAPE by failing to include psychological treatment in C.M.'s 2017–18 IEPs.  However, the administrative record contains little evidence pertaining to C.M.'s mental health prior to the 2017–18 school year, C.M.'s need for psychological treatment during that year, or the nature of the therapeutic services provided by C.M.'s psychologist, Dr. Milks.[9]  The Report completed following C.M.'s 2017 IEE reflects that C.M. had diagnoses of Autism Spectrum Disorder and Social Anxiety Disorder.  The Report concluded that C.M. reported levels of "social stress" that were typical as compared to others C.M.'s age.  (Admin. R. Ex. 7, P-2, at p. 35).  The Report also concluded that C.M. reported feelings of anxiety and depression "no more often than others [C.M.'s] age."  (*Id.*).[10]  Based on

---

[9]     As discussed above, the Hearing Officer rightfully excluded the testimony of Drs. Kern and Morley, who collaborated in conducting the IEE and preparing the Report.  Parents gave no indication that either psychologist would have testified on a topic beyond the scope of the Report itself.

[10]     C.M.'s mother reported to the evaluators that C.M. had been "speaking of suicide and [was] being treated by a psychologist weekly since the summer" of 2016.  (Admin R. Ex. 7, P-2, at p. 4).  However, the Report noted that "no risk assessment has even been completed on [C.M.] by school personnel" because no instances of suicidal ideation had been reported to school personnel.  (*Id.*).  The April 2017 IEP included these details in its summary of the Report.  While C.M.'s mother's statement is concerning, this Court must note that the Report—which stated that C.M.'s self-reported feelings of depression were typical and contained no recommendation that C.M. receive mental health treatment—was already deemed appropriate and comprehensive by Hearing Officer Jelley, whose decision is not presently before this Court for review.

the evaluation, the report explained that C.M. required, in addition to supports related to planning and organizing, "supports to continue to build appropriate self-advocacy skills and social skills." (*Id.* at p. 38). The Report made no recommendation regarding psychological treatment or other mental health services. Though the administrative record shows that C.M. continued to experience some anxiety while participating in Aspire and Discover, there is no evidence indicating how C.M.'s therapy with Dr. Milks helped C.M. manage this anxiety.[11]   Inexplicably, the administrative hearing transcript shows that Parents, having identified the doctor as a witness, did not call Dr. Milks to testify at the administrative hearing, despite there being no objections to her testimony. As such, this Court cannot conclude that the inclusion of psychological treatment in C.M.'s 2017–18 IEPs would have enabled C.M. to "make progress appropriate in light of [C.M.'s] circumstances," *Endrew F.*, 137 S. Ct. at 1001, or conferred any "meaningful benefit," *Ridley*, 680 F.3d at 268. In light of the evidence of record, this Court finds that Parents' argument lacks merit, and the Hearing Officer did not err in concluding that the School District provided C.M. a FAPE during that year.

In conclusion, the evidence in the administrative record supports the Hearing Officer's finding that the School District provided C.M. a FAPE during the 2017–18 school year. Furthermore, Parents have not established that the Hearing Officer erred by excluding the testimony of Drs. Kern and Morley. Because the Hearing Officer correctly concluded that the School District provided C.M. a FAPE, he also properly denied Parents' request for reimbursement for the cost of C.M.'s psychological treatment.

---

[11]   The School District introduced into evidence a letter from Dr. Milks to the College Board explaining C.M.'s need for breaks during examinations such as the SAT. (Admin. R. Ex. 6, S-15, at p. 5). The letter explains that C.M. suffers from anxiety and cognitive overwhelm, but it does not explain how treatment affects C.M.'s anxiety.

**CONCLUSION**

For the foregoing reasons, and based on a preponderance of the evidence, this Court finds that the School District provided C.M. a FAPE during the 2017–18 academic year and, thus, Parents are not entitled to reimbursement.  The Hearing Officer's decision is, therefore, affirmed.  Accordingly, the School District's cross-motion for summary judgment/judgment on the administrative record is granted, and Parents' cross-motion is denied.  Judgment is entered in favor of the School District.  Orders consistent with this Memorandum Opinion follow.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.